UNITED STATES of America

v.

**Antonio GARRUDO, Victor Long, Israel Abel, Miguel Campos, Jose Vizoso, Narcisco Suarez, and Oscar Karin.**

**Crim. No. 91–413–cr.**

United States District Court,
S.D. Florida,
Miami Division.

Sept. 9, 1994.

Kendall Coffey, U.S. Atty., Karen E. Rochlin, Asst. U.S. Atty., Miami, FL, for plaintiff U.S.

Robert N. Scola, Jr., Miami, FL, for defendant Israel Lazaro Abel.

Edward R. Shohat, Bierman, Shohat, Loewy & Perry, P.A., Miami, FL, for defendant Antonio Garrudo.

Frank Quintero, Jr., Law Office of Frank Quintero, Jr., P.A., Miami, FL, for defendant Miguel Campos.

Joel Kaplan, Miami, FL, for defendant Jose Vizoso.

G.P. Della Ferra, Miami, FL, for defendant Oscar Karin.

Julio Gutierrez, Miami, FL, for defendant Narcisco Suarez.

Robert J. Becerra, Raskin & Raskin, P.A., Miami, FL, for defendant Victor Long.

## ORDER

O'KELLEY, Chief Judge, sitting by designation.

The captioned case is before the court on the defendants' motion for a new trial. Other motions similar to this motion have been filed by defendants in other criminal cases tried by Judge Moore. The judges to whom these cases were assigned have recused themselves from deciding the motions for new trials. The case was designated to the undersigned judge, by the Honorable Gerald

Bard Tjoflat, Chief Judge of the United States Court of Appeals for the Eleventh Circuit, on May 25, 1994.[1] After today's order, the clerk can return this case to the judge assigned the case in the Southern District of Florida. Currently, there are some outstanding motions for release pending the new trial. These motions are best dealt with by the Southern District of Florida judges. The trial in this case began before Judge Michael Moore on or about July 19, 1993, and concluded on August 13, 1993. The defendants were found guilty of various charges related to the possession of cocaine. None of the defendants has been sentenced.

### Factual Background

Judge Moore entered duty as a United States District Judge for the Southern District of Florida in February 1992, after having served for approximately two years as the Director of the United States Marshals Service. Each defendant seeks a new trial on the theory that Judge Moore should have recused himself pursuant to Title 28 U.S.C. § 455(a) from presiding at defendant's trial.

On or about November 18, 1992, Mr. Nicholas Pastoressa, the former president of Central Security Systems, Inc., a company which manufactured metal detectors, entered a plea of guilty in the United States District Court for the Eastern District of New York to a charge of having conspired to pay bribes and illegal gratuities to persons in the U.S. Marshals Service responsible for contracting for the use of security in public buildings around the United States. Newspaper articles about Mr. Pastoressa's plea of guilty and other leads in the case were carried by the Reuters News Service, *The New York Times*, the *New York Law Journal*, the *Los Angeles Times*, and *New York Newsday* between November 19 and November 24, 1992.[2]

Eleven months later, on October 11, 1993, the *Miami Daily Business Review* printed a front page article which revealed that Judge Moore was under investigation by the U.S. Attorney's Office in Brooklyn for accepting gratuities worth thousands of dollars from officials of Central Security Systems. Daniel Klaidman, S. Florida Federal Judge Being Investigated, *Miami Daily Business Review*, Oct. 11, 1993, at 1. On October 13, *The Miami Herald* ran a similar article detailing the investigation. Tom Dubocq, Federal Judge Faces Gift–Taking Probe, *The Miami Herald*, Oct. 13, 1993, Part B at 1. On October 15, 1993, Judge Moore entered an order *sua sponte* recusing himself from all cases in which the United States was a party.

At the June 24, 1994 status conference held before this judge, the government admitted that Judge Moore was under investigation by the federal government as early as November 11, 1992. The government turned over a letter from the prosecutor in Brooklyn, New York, dated December 8, 1993, which indicates that Judge Moore was told on or about November 11, 1992, that he was the subject of a pending grand jury investigation in the Eastern District of New York. Letter from Julie Copeland, Assistant United States Attorney, Eastern District of New York, to William Keefer, Executive Assistant, United States Attorney, Southern District of Florida (Dec. 8, 1993). On November 11, 1992, FBI Special Agent Thomas Cavanagh and IRS Criminal Investigator James Reilly spoke with Judge Moore about the investigation while Judge Moore was attending a conference in Washington, D.C. The agents interviewed Judge Moore and served him with a grand jury subpoena duces tecum. Judge Moore was told on or about October 6, 1993, that his status had changed to that of a target of the grand jury's investigation. Judge Moore testified before the grand jury without immunity on November 2, 1993. The

---

**1.** Judge Tjoflat has designated a total of 14 cases to this court, all of which involve motions for new trial. The legal arguments are all similar, and the orders will be similar in that respect. The cases are all criminal ones which were tried before Judge Moore sometime in 1992 or 1993.

**2.** *See* Michael Weber, Giuliani, Judges Backed Ex–Cop's Courts Contract, *New York Newsday*,

Nov. 22, 1992, at 23; Ronald J. Ostrow, Man Pleads Guilty in Marshals Service Bribery Conspiracy, *Los Angeles Times*, Nov. 20, 1992, Part A, at 30; Ronald Sullivan, S.I. Businessman Admits Bribing U.S. Marshals Employees, *New York Times*, Nov. 20, 1992, Sec. B, at 3. The New York Times has a substantial circulation in Dade and Broward Counties.

investigation in New York has now concluded, and no indictment was sought against Judge Moore. Judge Moore has since resumed his full duties.

The defendants base their motions for new trial on the theory that Judge Moore should have recused himself from presiding at their trial because he was the subject of an investigation by the government. *See* 28 U.S.C. § 455(a). Although Judge Moore recused himself on October 15, 1993, defendants allege that the recusal should have occurred on November 11, 1992, eleven months earlier. As their trial occurred between July 19 and August 19, 1993, the difference in recusal dates is significant. Title 28 U.S.C. § 455 provides in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his *impartiality might reasonably be questioned* (emphasis added).

This part of the U.S. Code is the focal point of all of the defendants' motions for new trial.

*Legal Analysis*

### I.  Standard for Recusal

The government and the defendants agree that the standard for determining whether a judge should recuse is § 455(a); however, they reach different conclusions when they apply the standard. A judge should recuse himself when "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Torkington,* 874 F.2d 1441, 1446 (11th Cir.1989); *see also Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 859–860, 108 S.Ct. 2194, 2202–03, 100 L.Ed.2d 855 (1988).

■ Congress amended Section 455 approximately fifteen years ago in order to eliminate the "duty to sit" doctrine which had previously required a judge to hear a case absent a clear demonstration of bias or prejudice. *United States v. Coven,* 662 F.2d 162,

168 (2d Cir.1981), *cert. denied,* 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982). Section 455(a) puts the judge under a self-enforcing obligation to recuse himself where legal grounds exist for disqualification. *Torkington,* 874 F.2d at 1446; *United States v. Jaramillo,* 745 F.2d 1245 (9th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985). The standard is no longer a subjective one but is now objective.

> Congress hoped that this objective standard would promote public confidence in the impartiality of the judicial process by instructing a judge, when confronted with circumstances in which his impartiality could reasonably be doubted, to disqualify himself and allow another judge to preside over the case.

*Liljeberg,* 486 U.S. 847, 870–71, 108 S.Ct. 2194, 2207–08, (Rehnquist, C.J., dissenting) (footnote omitted).

■ Scienter is not required in order to find a violation of § 455(a). *Liljeberg,* 486 U.S. at 859, 108 S.Ct. at 2202.[3] "Neither actual partiality, nor knowledge of the disqualifying circumstances on the part of the judge during the affected proceeding, are prerequisites to disqualification under this section." *U.S. v. Kelly,* 888 F.2d 732, 744 (11th Cir.1989). From the letter written by the prosecutor and submitted by the government in this case, it is clear that Judge Moore *knew* he was the subject of an investigation. Thus, even though scienter is not required, Judge Moore's knowledge of his status as a subject of the investigation is not in dispute.

#### A.  Government's Argument

The government's argument hinges on the interpretation of two words: subject and target. The government concedes that as of November 11, 1992, Judge Moore was the subject of a pending investigation in another federal district. The government then contends that Judge Moore knew from his own

---

**3.** The dissent in *Liljeberg* found this standard to be unworkable. "A judge considering whether or not to recuse himself is necessarily limited to those facts bearing on the question of which he has knowledge." *Liljeberg,* 486 U.S. at 872, 108

S.Ct. at 2208–09 (Rehnquist, C.J., dissenting). The dissent did not believe that "constructive knowledge" should be the basis for a violation of § 455(a).

background as a prosecutor and United States Attorney that a "subject" is "a person whose conduct is within the scope of the grand jury's investigation." United States Attorney's Manual § 9–11.150 (hereinafter "USAM"). In contrast to that definition, a "target" is defined as "a person as to whom the prosecutor or the grand jury has substantial evidence of bias linking him/her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." USAM § 9–11.150. The government contends that to inform someone he is a subject of a grand jury investigation is to tell him virtually nothing of his status or of his likelihood of being named as a defendant.

The government also argues that Judge Moore's status in relation to the New York investigation would not have changed in any way because of the outcome or his rulings in any criminal cases in Miami. The United States Attorney's Office for the Southern District of Florida is recused from any aspect of the New York investigation under provisions of the United States Attorney's Manual. *See* USAM § 9–3.400. The government alleges that Judge Moore was "undoubtedly well aware" that the United States Attorney's Office for the Southern District of Florida would have had no knowledge, input, or control over the Eastern District of New York's grand jury investigation. The government concludes this line of argument by stating that any allegation of bias or conflict is implausible. The defendants respond that the government's claim that there is no bias is an appropriate response when recusal is sought under § 455(b), but has no merit in a case controlled by § 455(a). Under § 455(a), "what matters is not the reality of bias or prejudice, but its appearance." *Liteky v. United States,* —— U.S. ——, ——, 114 S.Ct. 1147, 1154, 127 L.Ed.2d 474 (1994).

In *United States v. McLain,* 823 F.2d 1457 (11th Cir.1987) *overruled on other grounds by United States v. Watson,* 866 F.2d 381, 385, n. 3 (1989), an attorney in the case was under investigation *by the same* United States Attorney's Office prosecuting his client. The court held that this situation created a conflict of interest and ordered the case retried for this, as well as other, rea-

sons. The government contends that the Miami situation is different because the United States Attorney's Office conducting the investigation of the Marshals Service was in New York while the criminal cases were tried with United States Attorneys in Florida. Furthermore, the ultimate charging decision was made by the United States Attorney for the Eastern District of New York. The United States Attorney for the Southern District of Florida had no input into that decision. The Florida office maintains that it did not even know of the investigation until October 1993. Accordingly, the government argues, no amount of favor curried by the trial judge with the defendants' prosecutors could possibly have been of any help to Judge Moore in the resolution of the New York investigation. The government contends that Judge Moore, by virtue of his long service as a United States Attorney and as an Assistant United States Attorney, would be aware that the Florida office could not become involved in the New York grand jury inquiry.

### B. Defendants' Argument

The defendants contend that because Judge Moore was a subject of the grand jury investigation during the time of their respective trials, then the average citizen would certainly conclude that Judge Moore's "impartiality might reasonably be questioned." 18 U.S.C. § 455(a); *United States v. Kelly,* 888 F.2d 732, 744 (11th Cir.1989) (test for recusal based on the impression of an objective lay observer). The government agrees that the standard is that of a "lay observer." The defendants argue that the government cannot rely on the distinctions between being a subject versus a target of an investigation. At least one defendant characterizes this argument over terminology as "hypertechnical distinctions only sophisticated attorneys, experienced in federal criminal practice, could possibly understand...." *See* Defendant's Reply to Government's Response to Defendant's Motion for a New Trial, *United States v. Abel,* 91–413–CR–Hoeveler, p. 2.

The defendants argue that being a subject of an investigation includes the individual within a category of suspects who possibly

have criminal culpability and exposure. The person who is a subject of the investigation is no longer a witness whom the government may wish to interview. The defendants allege that the terminology "subject" is used rather than "target" merely until the government has enough evidence to support a change in status. In fact, at least one defendant argues that at the time an individual is a subject he is more likely to feel the need to cooperate with the government so as to avoid becoming a target, a status that can frequently lead to an indictment.

The defendants point to the concession by the Assistant United States Attorney in *United States v. De la Mata*, 92–230–CR–Marcus, that Judge Moore was the "focus" of the investigation in November 1992. *See* Transcript, April 6, 1994, pp. 51–52. The government responds that the prosecutor simply argued that even if the court accepted the *defendants'* characterization of Judge Moore as the "focus" of the investigation, the United States was still entitled to a denial of the motion for new trial. However, the facts are now uncontested that Judge Moore was interviewed by federal agents in November and told that he was a subject of the investigation. The arguments relating to the "focus" comment are unnecessary, and the court's decision is not based on this concession by the Assistant United States Attorney.

The defendants also view Judge Moore's ultimate recusal in a different light than the government. The defendants contend that because Judge Moore recused himself only when the public became aware of the investigation in October of 1993, and not when Judge Moore himself first learned of the investigation in November of 1992, his impartiality is called into question. This behavior, the defendants argue, would cause the average lay person to have doubts as to his impartiality. Furthermore, the defendants emphasize that Judge Moore was told that he was a target of the investigation on October 6, 1993. However, he did not recuse himself until October 15, 1993, nine days after being told he was a target. With the press reports of October 11 identifying Judge Moore as the Marshals official under investigation by the

government, the defendants claim that they would have moved to have Judge Moore recused if he had not done so himself.

## II.   When Should Recusal Have Occurred

### A.   The Standards Established by Liljeberg

■   Congress amended the Judicial Code in 1974, changing the standard of recusal for judges to an objective one. The earlier statute called upon a federal judge to recuse himself if, "in his opinion," it would be improper for him to hear the case. *See Liljeberg*, 486 U.S. at 870–871, n. 1, 108 S.Ct. at 2208, n. 1 (Rehnquist, C.J., dissenting). Today, § 455 is violated if the general public could reasonably believe that a judge knows of disqualifying facts or in other respects believes that there would be an appearance of impropriety. *Liljeberg*, 486 U.S. 847, 108 S.Ct. 2194 (1988). In *Liljeberg*, Judge Collins was the district court judge in a civil law suit between John Liljeberg and St. Jude Hospital of Kenner, Louisiana. Judge Collins ruled in favor of Liljeberg in the litigation. Later, it was discovered that Judge Collins had been a member of the Board of Trustees of Loyola University while Liljeberg was negotiating to purchase a parcel of land on which to construct a hospital. "The success and benefit to Loyola of these negotiations turned, in large part, on Liljeberg's prevailing in the litigation before Judge Collins." *Liljeberg*, 486 U.S. at 850, 108 S.Ct. at 2198. The Supreme Court conducted an analysis of the facts and the particular conflict in the case. The Court assumed that Judge Collins *did not* have actual knowledge of Loyola's interest in the dispute over the ownership of St. Jude and its certificate of need.[4]

The Court found it important to "identify the facts that might reasonably cause an objective observer to question Judge Collins' impartiality." *Id.* at 865, 108 S.Ct. at 2205. *See also U.S. v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986) (recognizing that the situation that could bear on the issue of bias or prejudice is to be viewed through the eyes of an objective person). The Supreme Court

4.   Judge Collins was on the Board of Trustees at    Loyola and regularly attended such meetings.

found it "remarkable" and "inexcusable" that Judge Collins did not recuse himself when he learned of his financial interest in the subject matter of the controversy before him. The Court found this behavior to be a violation of § 455(b)(4). Judge Moore did recuse himself as soon as it became public knowledge that he was a target of the investigation. However, he did not recuse himself when he was told that he was a subject of the investigation and was interviewed by two federal agents.

The distinction between being a subject of an investigation or a target of an investigation, which the government argues, is a weak basis for distinguishing this case from *Lilje-berg*. It does seem a matter of semantics, and, as Judge Moore knew he was being investigated, he should have recused himself. The government contends that this case is different from *Liljeberg* in that Judge Moore's position as the subject of a criminal investigation does not give rise to any obvious sympathy for one party or the other. The government contends that any bias Judge Moore had would not tilt towards the prosecution. Judges who have been charged with criminal misconduct in previous cases have been obliged to recuse themselves because of a claimed heightened sympathy for defendants. *See United States v. Jaramillo,* 745 F.2d 1245 (9th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985).

The majority of cases that address recusal in the Eleventh Circuit stem from civil cases. Our circuit has stated that "[a] judge should disqualify himself only if a reasonable person would question his impartiality...." *Giles v. Garwood,* 853 F.2d 876 (11th Cir.1988), *cert. denied,* 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989). The court finds the reasoning for recusal in civil cases just as compelling, if not more so, in criminal matters. In a criminal case, it is the government, with its great array of resources, that must prove that the defendant is guilty of the alleged crime. Any appearance that the case against the defendant is unfair or impartial may call into question his constitutional rights to a fair trial. *See Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir.), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980) ("any question of a judge's impartiality threatens the purity of the judicial process and its institutions.")

In *Jaramillo,* the court found that when a federal judge learned of his own indictment he properly disqualified himself in the middle of a jury trial. *Jaramillo,* 745 F.2d at 1248. Although the judge's indictment in that case triggered his disqualification, the defendants argue that an investigation may create as much, if not more, reason to question a judge's impartiality. The defendants' line of reasoning is that once an indictment has been returned, a decision has already been made by the government to publicly press charges. The pendency of an investigation inherently means that no such decision has been etched in stone and, thus, could potentially be influenced.

Whether Judge Moore did in fact attempt to curry favor is not the issue here, nor will this court assume that he acted in anything other than a professional manner in the defendants' trials. However, the rules governing conflicts are designed to prevent the reasonable possibility of prejudice. Section 455(a) is designed to "promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Lilje-berg,* 486 U.S. at 865, 108 S.Ct. at 2205.

**B. The Strong Mandatory Language of Section 455(a)**

■ The government is using the wrong standard in focusing on what Judge Moore knew about the meaning of words such as target and subject of an investigation. The standard adopted by this circuit and the Supreme Court, and agreed to by the government in this case, is what an individual member of the public would know about the distinction between being a subject of an investigation versus a target of an investigation. The common meaning of those words to an objective, disinterested lay observer is that the individual is being investigated by the government. There is no distinction in the common use of the words subject and target.

■ The government next argues that it was technically impossible for Judge Moore to influence the United States Attorney's Of-

fice in New York. Public officials, such as judicial officials, who come under scrutiny by the government are often investigated by the Public Integrity Section of the Department of Justice. The court can accept for the purposes of this decision that any rulings made by Judge Moore in Miami cases could have no impact on the grand jury investigation in New York and/or on Public Integrity investigations in Washington, D.C. However, the inquiry into one's ability to influence an investigation is not the inquiry mandated by the law. Section 455(a) does not ask whether it is possible to exert one's influence but instead asks whether one's impartiality might reasonably be questioned. This court finds that an objective lay observer would have questioned Judge Moore's impartiality.

■ Section 455(a) focuses on the *appearance* of impartiality, as opposed to the existence in fact of any bias or prejudice. The statute does not give a judge discretion as to whether to recuse himself but states that a judge "*shall* disqualify himself in any proceeding in which his impartiality might be questioned." 28 U.S.C. § 455(a) (emphasis added). The statute does not allow a judge to disqualify himself if *he* thinks he could be affected by external matters, such as being close friends with a witness or being under investigation. Rather, the statute tells him to disqualify himself if the public may perceive him, or his rulings, as being affected. *See U.S. v. Kelly,* 888 F.2d 732, 744–45 (11th Cir.1989) (holding that the district court judge should have recused himself as his spouse was a friend of the defense witness' wife). Thus, "a judge faced with a potential ground for disqualification ought to consider how his participation in a given case looks to the average person on the street." *Potashnick,* 609 F.2d at 1111 (1980). Section 455(a) requires judges to resolve any doubts they may have as to whether they should hear a case in favor of disqualification.

It seems clear to this court that the average person on the street will believe that if a federal judge is the subject of a pending grand jury investigation, then that individual cannot conduct criminal trials impartially. Any member of the public, upon hearing that someone is a *subject* of an investigation, is

going to believe that the individual is being investigated. In fact, while one is a subject and has not yet been indicted, the public could perceive that there is even more temptation to try to avoid the indictment by using whatever influence possible. After an indictment has been issued, it is too late to try to convince the government not to indict.

■ The parties agree that Judge Moore was the subject of a grand jury investigation as of November 11, 1992. The parties agree that the standard for applying 28 U.S.C. § 455(a) is that of the objective lay person. The parties agree that it was appropriate for Judge Moore to recuse himself at some point during the investigation; they only disagree as to *when* this recusal should have occurred. The government argues that Judge Moore properly recused himself in October 1993 when he was told he was the *target* of an investigation. The defendants allege that Judge Moore should have recused himself in November 1992 when he was interviewed by the F.B.I. and told he was the *subject* of an investigation. The issue, thus, is whether § 455(a) required Judge Moore to recuse himself at an earlier date. This court finds, for the above stated reasons, that it does. The court will not deal in vague nuances of words and their meanings. "Quite simply and quite universally, recusal [is] required whenever 'impartiality might reasonably be questioned.'" *Liteky v. United States,* —— U.S. ——, ——, 114 S.Ct. 1147, 1154, 127 L.Ed.2d 474 (1994). When a member of the federal judiciary is under criminal investigation, he should recuse himself from hearing criminal matters, as the public might perceive him to be biased.

### C. Is a New Trial Necessary

■ The government argues that even if Judge Moore erred by failing to disqualify himself, such error was harmless. *See Parker v. Connors Steel Co.,* 855 F.2d 1510, 1525–26 (11th Cir.1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989). In determining whether a judgment should be vacated for a violation of § 455(a), the Supreme Court identified three factors which are appropriate for a court to consider: (1) the risk of injustice to the parties in the

particular case; (2) the risk that the denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. *Liljeberg*, 486 U.S. at 864, 108 S.Ct. at 2204.

The government contends that the "risk" to the United States is not insubstantial, in that the expense and effort would needlessly tax prosecutorial and judicial resources. However, this circuit has recognized that "[t]he unfairness and expense which results from disqualification ... can be avoided in the future only if each judge fully accepts the obligation to disqualify himself in any case in which his impartiality might reasonably be questioned." *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1115 (5th Cir.1980). Economic concerns or scheduling difficulties were not factors the Supreme Court had in mind when it identified risk of injustice to the parties. The government further argues that the risk of injustice to the defendant is virtually nonexistent. The court does not find it necessary to examine the allegations of injustice or detrimental rulings in each particular case. Regardless of the rulings in each case, the perception of bias in the judicial system must be corrected.

The government also contends that there is no risk of injustice in other cases if the court denies the motion for new trial. The government believes that the self-enforcing mechanism of § 455 worked in this instance, as Judge Moore recused himself when he became a target of the New York investigation. Finally, the government alleges that there is no risk of undermining the public's confidence in the judicial system as the defendants' demands for a new trial are in no way based on the merits of the verdict returned against them. In *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir.1988), the Eleventh Circuit did not find it necessary to order reassignment of the case where a judge relied on a law clerk for assistance in resolving a summary judgment motion when the law clerk was associated with one of the parties to the dispute. The court noted that any harm to public confidence had already occurred and granting relief would not change the public's perception.

The court's holding in *Parker* can be distinguished from these cases. In *Parker*, the Eleventh Circuit had already reviewed the summary judgment decision and found it proper. Thus, the court concluded that the public would "lose faith in our system of justice because the case will be overturned without regard to the merits of the ... claims." *Parker*, 855 F.2d at 1527. In this case there has been no ruling on appeal to the Eleventh Circuit. The defendants' individual complaints have not been addressed.

In another case, the court found that the judge's involvement as a private lawyer in the disputed evidentiary facts of a case before him should have resulted in his recusal under § 455(b). *U.S. v. Alabama*, 828 F.2d 1532 (11th Cir.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). While the subsection for recusal is different, it is important to note that the court found a retrial necessary, even though it would come at great expense in terms of time, energy and legal fees. *Id.* at 1545–46. *See also U.S. v. Kelly*, 888 F.2d 732, 744 (11th Cir.1989) (new trial was ordered).

This court does not rule on any of the individual decisions made by Judge Moore during the course of the trial. The defendants' arguments that some of the discretionary rulings made in the government's favor by Judge Moore risk injustice to the parties does not factor into this court's decision. The court has no doubt that the third factor identified by the Supreme Court in *Liljeberg* is sufficient by itself to warrant a new trial. Public confidence in the judiciary is the foundation for our entire system of justice and cannot be abused or dismissed lightly.

Federal Rule of Civil Procedure 60(b)(6) authorizes a district court, on motion and upon such terms as are just, to relieve a party from a final judgment for any "reason justifying relief from the operation of the judgment." This case is an extraordinary circumstance and, with this decision as precedent, should not occur again. Although the finality of judgments is to be preserved, in this instance the court cannot run the risk that the reputation of the justice system may

be tarnished. The court will thus grant a new trial to the defendants in this case.

*CONCLUSION*

For the above discussed reasons, the court hereby GRANTS defendants' motions for new trial. All other matters can be ad-dressed by the judge to whom this case is otherwise assigned.

IT IS SO ORDERED.