# United States Court of Appeals for the Federal Circuit

**CENTRIPETAL NETWORKS, INC.,**
*Plaintiff-Appellee*

**v.**

**CISCO SYSTEMS, INC.,**
*Defendant-Appellant*

---

2021-1888

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 2:18-cv-00094-HCM-LRL, Senior Judge Henry C. Morgan, Jr.

---

Decided:  June 23, 2022

---

PAUL J. ANDRE, Kramer Levin Naftalis & Frankel LLP, Menlo Park, CA, argued for plaintiff-appellee.  Also represented by JAMES R. HANNAH, LISA KOBIALKA, HANNAH YUNKYUNG LEE; CHRISTOPHER COTROPIA, Bey & Cotropia PLLC, Richmond, VA; ALAN J. HEINRICH, ANDREI IANCU, Irell & Manella LLP, Los Angeles, CA; PHILIP J. WARRICK, Washington, DC; BLAIR A. SILVER, Banner & Witcoff, Ltd., Washington, DC.

MARK CHRISTOPHER FLEMING, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for defendant-appellant.  Also represented by SOFIA CAROLINE BROOKS, I, ANNALEIGH E. CURTIS, WILLIAM F. LEE, COURTNEY C.

MERRILL; HEATH BROOKS, THOMAS SAUNDERS, Washington, DC; THOMAS GREGORY SPRANKLING, Palo Alto, CA; MATTHEW CHRISTOPHER GAUDET, L. NORWOOD JAMESON, Duane Morris LLP, Atlanta, GA.

ROBERT P. TAYLOR, RPT Legal Strategies PC, San Francisco, CA, for amici curiae Alliance of U.S. Startups and Inventors for Jobs, Innovation Alliance.

ANDREW JOHN PINCUS, Mayer Brown LLP, Washington, DC, for amicus curiae High Tech Inventors Alliance. Also represented by CARMEN LONGORIA-GREEN.

————————————

Before DYK, TARANTO, and CUNNINGHAM, *Circuit Judges.*

DYK, *Circuit Judge.*

Appellant Cisco Systems, Inc. ("Cisco") appeals from the judgment of the U.S. District Court for the Eastern District of Virginia holding that Cisco willfully infringed claims 9 and 17 of U.S. Patent No. 9,203,806 ("the '806 patent"); claims 11 and 21 of U.S. Patent No. 9,560,176 ("the '176 patent"); claims 18 and 19 of U.S. Patent No. 9,686,193 ("the '193 patent"); and claims 24 and 25 of U.S. Patent No. 9,917,856 ("the '856 patent"). The court awarded enhanced damages and royalties exceeding $2.75 billion to patentee-appellee Centripetal Networks, Inc. ("Centripetal"). *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 492 F. Supp. 3d 495, 608 (E.D. Va. 2020) ("*Merits Op.*").

Because we hold that the district court judge was disqualified from hearing the case once he became aware of his wife's ownership of Cisco stock on August 11, 2020, *see* 28 U.S.C. § 455(b)(4), we reverse the district court's denial of Cisco's motion for recusal, *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 492 F. Supp. 3d 615 (E.D. Va. 2020) ("*Recusal Op.*"), vacate all orders and opinions of the court entered on or after August 11, 2020, including the final

judgment, and remand for further proceedings before a different district court judge.

## BACKGROUND

This case began on February 13, 2018, when Centripetal sued Cisco for infringement of ten of Centripetal's U.S. patents in the Eastern District of Virginia.[1]  The patents relate to systems that perform computer networking security functions.  Cisco petitioned for *inter partes* review ("IPR") of many of the asserted claims, and Centripetal subsequently narrowed the claims in the district court proceeding to those not undergoing IPR.[2]

The case was originally assigned to Judge Mark S. Davis.  On November 6, 2018, Centripetal requested that the case be reassigned to Judge Henry C. Morgan, Jr., who had recently presided over a jury trial involving related technology and five of the same patents.  That motion was granted on November 27, 2018, over Cisco's opposition.  Beginning on May 6, 2020, Judge Morgan presided over a 22-day bench trial, which included an over 3,507-page record, 26 witnesses, and over 300 exhibits.  Judge Morgan heard final arguments on June 25, 2020.

While the case was still pending before him, Judge Morgan learned that his wife owned Cisco stock.  He sent an email to the parties on August 12, 2020, notifying them that while preparing his 2019 financial disclosure report to

---

[1]    On March 29, 2018, Centripetal filed an Amended Complaint adding infringement of claims 1–25 of the '856 patent to its causes of action, bringing the total number of asserted patents to eleven.  *See* Am. Compl. at 157 (¶ 356), ECF No. 29, Case No. 18-cv-94-HCM-LRL (E.D. Va. Mar. 29, 2018).

[2]    The Patent Trial and Appeal Board later found the claims of six related patents, which are not the subject of these proceedings, to be unpatentable.

the judiciary the previous day, his judicial assistant had discovered that his wife owned 100 shares of Cisco stock valued at $4,687.99. The judge informed the parties that his wife had purchased the stock in October 2019 on the advice of her stockbroker and had "no independent recollection of approving the transaction." *Recusal Op.*, 492 F. Supp. 3d at 617. He further explained that at the time he was informed of the existence of the stock, a "full draft of [his] opinion [on the bench trial] had been prepared" and "[v]irtually every issue was decided prior thereto." *Id.* (citation omitted). Finally, he stated that the "shares did not and could not have influenced [his] opinion on any of the issues in th[e] case." *Id.* (internal quotation marks and citation omitted).

The statute governing recusal of federal judges in such circumstances is 28 U.S.C. § 455. It provides, in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances: . . .

>> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding. . .

> (c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his

> spouse and minor children residing in his household. . . .
>
> (f) Notwithstanding the [above], if any . . . judge . . . would be disqualified, *after substantial judicial time has been devoted to the matter*, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse . . . *has a financial interest in a party* (other than an interest that could be substantially affected by the outcome), disqualification is not required if the . . . judge [or his spouse], as the case may be, *divests himself or herself of the interest that provides the grounds for the disqualification*.

28 U.S.C. § 455 (emphasis added).

Following Judge Morgan's disclosure, Centripetal notified the court that it had no objection to the judge's continuing to preside over the case. *Recusal Op.*, 492 F. Supp. 3d at 617–18. Cisco, on the other hand, filed a motion for miscellaneous relief nine days later (hereinafter "Motion for Recusal"), requesting Judge Morgan's recusal under both § 455(a) and (b)(4). *Id.* at 618. Judge Morgan ordered Centripetal to file a response. Centripetal opposed the Motion for Recusal on the grounds that § 455(b)(4) was inapplicable and, even if it were applicable, the § 455(b)(4) violation could be cured by divestiture pursuant to § 455(f).

On September 9, 2020, Judge Morgan heard oral argument on the motion. At the hearing, Judge Morgan stated that at the time he learned of his wife's ownership of the Cisco stock, he had already completed a 130-page draft of his opinion, though he had not "decided 100 percent of it." J.A. 18580. He told the parties that although he recognized "the simplest thing would be to sell the stock," he had "already strongly indicated that [he] might be considering awarding damages in the case" by "ask[ing] for additional

6        CENTRIPETAL NETWORKS, INC. v. CISCO SYSTEMS, INC.

evidence on damages" at trial, "and that might mean that [the final] judgment would have an adverse effect upon Cisco's stock." J.A. 18577. Selling the stock in light of that possibility, he said, "would defeat the very purpose of the Rules," implying concern about insider trading. *Id.*

Accordingly, Judge Morgan explained, instead of selling his wife's stock, he had it placed in a blind trust set up solely for the Cisco stock. Under the terms of the trust, Judge Morgan was to be notified when the trust assets had been completely disposed of or when their value became less than $1,000. *See* Appellant's Suppl. Br. 4. There is no suggestion in the briefs or record that Judge Morgan received any such notification while the case was pending before him.

On October 2, 2020, Judge Morgan issued an opinion and order denying Cisco's Motion for Recusal. Therein, he concluded that because "a reasonable person would not conclude that [he had known] of th[e] interest [in Cisco] and yet heard the case[,] . . . [§] 455(a) d[id] not warrant recusal." *Recusal Op.*, 492 F. Supp. 3d at 622. As for § 455(b)(4), Judge Morgan found it did not apply in this case because he had not discovered his wife's interest in Cisco until he had decided "virtually" every issue and "mostly drafted [the] opinion." *Id.* at 623. Even if § 455(b)(4) did apply, Judge Morgan concluded that placing the Cisco shares in a blind trust "cured" any conflict because it constituted "divestiture" under a safe harbor provided by § 455(f). *Id.* at 624.

On October 5, 2020, Judge Morgan issued a 167-page Opinion and Order containing his findings of fact and conclusions of law that Cisco willfully infringed the asserted claims of the '856, '176, '193, and '806 patents. He awarded Centripetal damages of $755,808,545 (enhanced 2.5 times to $1,889,521,362.50), pre-judgment interest of $13,717,925, and "a running royalty of 10% on the apportioned sales of the accused products and their successors

for a period of three years followed by a second three year term with a running royalty of 5% on said sales." *Merits Op.*, 492 F. Supp. 3d at 608.

Cisco moved for amended findings and judgment under Rule 52(b) with respect to direct infringement and damages and for a new trial under Rule 59(a)(2). *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 526 F. Supp. 3d 137, 139–40 (E.D. Va. 2021). The court denied those motions on March 17, 2021. *Id.* at 140. Cisco timely appealed to this court, raising issues pertaining to the district court's infringement and damages findings and also raising the question "[w]hether the district judge should have recused himself under 28 U.S.C. § 455(b)." Appellant's Br. at 5. On March 18, 2022, we issued an order limiting the issues to be addressed at oral argument solely to the recusal issue. Following the April 4, 2022 oral argument, we granted Centripetal's motion for leave to file supplemental briefs on the recusal issue. That briefing concluded on April 29, 2022.

We have jurisdiction over this matter under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Cisco has waived any argument that Judge Morgan was disqualified from hearing the case under § 455(a).[3] Rather, Cisco argues that Judge Morgan was required to recuse under § 455(b)(4) absent divestiture under § 455(f). We agree. Indeed, Centripetal itself does not dispute that recusal was required absent divestiture. *See* Appellee's Resp. Br. at 60; Appellee's Suppl. Br. at 2. There are thus two primary questions before us. The first is whether Judge Morgan was relieved of his duty to disqualify under § 455(b)(4) because his wife had "divest[ed] . . . herself of

---

[3]    Recusal under § 455(a) may be waived, but recusal under § 455(b) cannot be waived. *See* § 455(e).

the [financial] interest [in Cisco]" pursuant to § 455(f).  If we conclude that the requirements of § 455(f) were not satisfied, the second question is the proper remedy, which turns in large part on whether Judge Morgan's failure to disqualify himself was harmless error.  *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988).

We review a district court's denial of a motion for recusal for abuse of discretion.  *See United States v. Mitchell*, 886 F.2d 667, 671 (4th Cir. 1989); *see also Shell Oil Co. v. United States*, 672 F.3d 1283, 1288 (Fed. Cir. 2012) ("Consistent with the vast majority of courts to consider this issue, we review a judge's failure to recuse for an abuse of discretion.").[4]

I

We first address whether placement of the Cisco stock in a blind trust satisfied the statutory requirements of § 455(f).  Section 455(f) stands as the only exception to the bright-line rule that a federal judge is disqualified "based on a known financial interest in a party."  *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003).  As noted above, it provides:

Notwithstanding [§ 455(a) and (b)(4)], if any . . . judge . . . would be disqualified, *after substantial judicial time has been devoted to the matter,*

---

[4]    We have indicated that recusal motions are governed by the law of the regional circuit.  *See Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 882 F.2d 1556, 1567 n.8 (Fed. Cir. 1989).  Here, whether we apply the law of this Circuit or the Fourth Circuit, the outcome is the same. Whether applying the regional circuit law is the correct approach in light of the substantial interest in having a uniform standard on issues of recusal, with respect to the various trial-level tribunals that we review, must await another case.

> because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse . . . has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the [] judge [or his spouse], as the case may be, *divests himself or herself of the interest that provides the grounds for the disqualification*.

§ 455(f) (emphasis added).

Here, there is no dispute that the Cisco stock constitutes a "financial interest" and that "substantial judicial time [had] been devoted to the matter," such that Judge Morgan's wife could have divested herself of that interest under § 455(f) to avoid the judge's disqualification.[5] What is disputed between the parties is whether her placement of the stock in a blind trust qualified as divestment.

A "blind trust" is "an arrangement whereby a person, such as a public official, in an effort to avoid conflicts of interest, places certain personal assets under the control of an independent trustee with the provision that the person is to have no knowledge of how those assets are managed."

---

[5]    Cisco does not suggest that divestiture under § 455(f) was unavailable because Judge Morgan's wife's interests would be "substantially affected" by the outcome.

We have no occasion to decide if divestment under § 455(f) would alleviate the need to recuse in all cases. Some courts suggest that it does not apply in all cases. *See, e.g.*, *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 715 (7th Cir. 1986) ("We do not mean to endorse sale as a cure for disqualification in all cases[;] Section 455(b) is only one node in the network of statutory and non-statutory ethical principles that control the conduct of federal judges.").

10    CENTRIPETAL NETWORKS, INC. v. CISCO SYSTEMS, INC.

*Blind Trust*, *Webster's New World Dictionary* 149 (3d ed. 1988). According to Centripetal, placing the stock in the blind trust qualified as divestment.

Although it is well established that selling a financial interest in a company qualifies as divestment,[6] Centripetal admits that there are no cases holding that placement of stock in a blind trust constitutes divestment. The only authority Centripetal cites for its argument that placing stock in a blind trust is a valid divestment mechanism under § 455(f) is an unsupported assertion in a law review article. *See* Appellee's Resp. Br. at 60 (citing Marianne M. Jennings & Nim Razook, *Duck When a Conflict of Interest Blinds You: Judicial Conflicts of Interest in the Matters of Scalia and Ginsburg*, 39 U.S.F. L. Rev. 873, 904 (2005)).

In a case turning on statutory interpretation, "our first job is to try to determine congressional intent, using traditional tools of statutory construction." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990) (quoting *NLRB v. Food & Com. Workers*, 484 U.S. 112, 123 (1987)). "Our 'starting point is the language of the statute,'" *id.* (quoting *Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 5 (1985)), but we also "look to the provisions of the whole law, and its object and policy," *id.* (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (same).

Because § 455 does not define "divest," we look first to the word's "ordinary meaning . . . at the time Congress

---

6    *See, e.g.*, *In re Certain Underwriter*, 294 F.3d 297, 300–04 (2d Cir. 2002) (finding that district court judge's sale of stock in parties constituted divestment); *see also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 70, 81–90 (S.D.N.Y. 2001) (tracing legislative history to support holding that a judge may continue to preside over a matter if she sells stock in a party).

enacted the statute." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *see Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012) (citing *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011)). When Congress enacted § 455(f) in 1988, Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, 102 Stat. 4642, 4667 (1988), "divest" was ordinarily understood to mean to "dispossess or deprive," *Divest*, 1 *Webster's Third New International Dictionary* 663 (1986); *see also Divest*, *Webster's New World Dictionary* 400 (3d ed. 1988) (same); *Divest,* 4 *Oxford English Dictionary* 889 (2d ed. 1988) (same). What must be "divested" under § 455(f) is "the financial interest" giving rise to the disqualification. The statute defines "financial interest" as "*ownership* of a legal or equitable interest, however small." § 455(d)(4) (emphasis added). Thus, it logically follows that to "divest" oneself of "ownership" of a legal or equitable interest is possible only if one is "deprived or dispossesse[d]" of ownership—something that is possible only if the interest is sold or given away.

Also telling is Congress's use of the present tense in § 455(b)(4), providing that a judge should not sit when he or she "*has* a financial interest" in a party. That verb usage suggests that selling or donating the stock is the only cure envisioned under § 455(f). But at the time of Judge Morgan's actions, his wife still "*ha[d]* a financial interest" in Cisco. While placing the stock in a blind trust removed her control over the stock, it did not eliminate her beneficial interest in Cisco.

There is authority suggesting that placement of stock in a blind trust does not constitute divestiture. The Judicial Conference's Committee on Codes of Conduct has ruled, well before the events of this case, that "[a] judge's use of a blind trust does not obviate the judge's recusal obligations." Advisory Op. 110, Comm. on Codes of Conduct, Jud. Conf. of the U.S. (Aug. 2013); *see also* M. Margaret McKeown, *To Judge or Not to Judge: Transparency and*

12    CENTRIPETAL NETWORKS, INC. v. CISCO SYSTEMS, INC.

*Recusal in the Federal System*, 30 Rev. Litig. 653, 669 n.57 (2011) ("[A] judge cannot avoid recusal by placing assets in a blind trust . . . ."). We are entitled to give some weight to the committee's views because Congress enacted § 455(b) to match Canon 3C of the Code of Judicial Conduct, which provides in relevant part that a judge "shall disqualify himself in a proceeding" where he "knows that he . . . or his spouse . . . has a financial interest . . . in a party to the proceeding,"[7] and to ensure that statutory and ethical duties were consistent with each other, *see* H.R. Rep. No. 93-1453 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6351, 6353 (amendments to § 455 were meant to "conform generally with the recently adopted canon of the Code of Judicial Conduct which relates to disqualification of judges for bias, prejudice or conflict of interest" in order to make "both the statutory and the ethical standard virtually identical"); *Liljeberg*, 486 U.S. at 858 n.7 (explaining that the 1974 amendment to § 455 was "to conform with the recently adopted ABA Code of Judicial Conduct, Canon 3C"); *see also Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 715 (7th Cir. 1986) ("In matters of judicial ethics[,] we are bound to give some weight to the view of the committee of judges that the Judicial Conference of the United States has established to advise federal judges on ethical questions.").

There are, moreover, two central purposes of the statute that would be undermined by defining divestment to include placement of stock in a blind trust. First, unless the trustee immediately sold the stock interest upon creation of the blind trust (which did not occur here), the blind trust would allow a judge to continue to sit on a case for which he knows he or his spouse has a beneficial interest

---

[7]  *See* Code of Judicial Conduct for United States Judges, Canon 3(C)(1)(c), *reprinted in* 69 F.R.D. 273, 277 (1975).

in the outcome, in direct contravention of the statute's purpose. *See Chase*, 343 F.3d at 128 ("Congress has . . . provided that a known financial interest in a party, no matter how small, is a disqualifying conflict of interest and one that cannot even be waived by the parties."). The significance of this factor is apparent in how the Executive Branch handles corresponding rules governing recusal of executive branch officials who have a "financial interest" in a particular government action. *See* 18 U.S.C. § 208(a). A regulation interpreting § 208 "and other Federal conflict of interest statutes and regulations" provides that recusal rules continue to "apply to the assets that an interested party transfers to [a blind] trust until such time as he or she is notified by the independent trustee that such asset has been disposed of or has a value of less than $1,000." 5 C.F.R. § 2634.403(a)(2).[8] The reason for this requirement, the regulation provides, is that until the interest is disposed of, "the interested party knows what assets he or she placed in the trust" and therefore, "the possibility still exists that the interested party could be influenced in the performance of official duties by those interests." *Id.*

Second, even if the trustee had sold the stock at the time the blind trust was created, the exception provided under § 455(f) is nevertheless a narrow one, and construing "divest" to include placement of stock in a blind trust would be in direct conflict with another provision of the statute. Section 455(c) provides that "[a] judge should inform himself about his personal and fiduciary financial interests,

---

[8]    The $1,000 limit for the executive branch is not applicable to judges. Any interest, "however small," is disqualifying. *In re Va. Elec. & Power Co.*, 539 F.2d 357, 368 (4th Cir. 1976) ("If a judge has an ownership interest in a party or in the subject matter in controversy, it matters not at all whether the interest is a large or infinitesimally small amount.").

14     CENTRIPETAL NETWORKS, INC. v. CISCO SYSTEMS, INC.

and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household." This was exactly the Judicial Conference Committee's concern in Advisory Opinion 110. It explained that "[t]he Committee has consistently advised that the use of a blind trust would be incompatible with a judge's duty to 'keep informed' about financial interests under Canon 3C(2)," after which § 455(c) is modeled. Advisory Op. 110. That logic makes sense here, since there would have been no way for Judge Morgan to keep informed of his personal financial interests (and thus comply with his obligations under § 455(c)), if his or his wife's stock were kept in a blind trust, which is, by definition, designed to shield him from such knowledge.[9]

*   *   *

In light of the foregoing, we hold that placing assets in a blind trust is not divestment under § 455(f), and Judge Morgan was disqualified from further proceedings in the case under § 455(b)(4).

---

[9] Although Judge Morgan suggested there would be an appearance of insider trading if he sold the stock, no such possibility exists. Selling the stock to comply with ethical obligations is not insider trading, as was made clear in the Stop Trading on Congressional Knowledge Act of 2012 ("STOCK Act"), Pub. L. 112–105, 126 Stat. 291, 298 (2012). Although the STOCK Act provides that the insider trading restrictions of securities law apply to judicial employees (as well as to members of Congress and other federal officials), it states that nothing in the Act shall be construed to "be in derogation of existing . . . ethical obligations governing . . . judicial officers." *Id.* at 297–98 Here, the sale of the stock would have been done to comply with ethical obligations.

## II

We next consider the appropriate remedy.  "Although § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty." *Liljeberg*, 486 U.S. at 862.  Here, the question is whether the rulings Judge Morgan made after August 11, 2020, when he became aware of his wife's financial interest in Cisco, should be vacated as a remedy for his failure to recuse.

As we explained in *Shell*, to determine whether vacatur is the appropriate remedy for a violation of § 455(b), we apply the harmless error analysis set forth by the Supreme Court in *Liljeberg*.  Under that test, "mandatory recusal does not require mandatory vacatur."  *Shell*, 672 F.3d at 1293; *see also Williamson v. Ind. Univ.*, 345 F.3d 459, 464–65 (7th Cir. 2003) (finding vacatur "is not automatically justified" for a violation of § 455 "if [the] error was harmless").  Although *Liljeberg* involved a violation of § 455(a), it is now well-recognized that the harmless error analysis applies equally to violations of § 455(b).  *See Shell*, 672 F.3d at 1292; *Polaroid Corp. v. Eastman Kodak Co.*, 867 F.2d 1415, 1421 (Fed. Cir. 1989); *see also Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003) ("[W]e are confident that § 455(b) violations are also subject to the doctrine of harmless error.").[10]

---

[10] Another distinction is that *Liljeberg* involved a Rule 60(b) motion, whereas this case involves a motion for recusal.  This court and others have held that the same analysis generally applies to motions for recusal and Rule 60(b) motions.  *See Polaroid Corp. v. Eastman Kodak, Co.*, 867 F.2d 1415, 1421 (Fed. Cir. 1989); *In re Sch. Asbestos Litig. v. Kelly*, 977 F.2d 764, 785 (3d Cir. 1992).  However, in the Rule 60(b) context, the interests of finality must be

16     CENTRIPETAL NETWORKS, INC. v. CISCO SYSTEMS, INC.

Under *Liljeberg*, there are three factors courts should consider when deciding whether to vacate a judgment: (1) "the risk of injustice to the parties in the particular case"; (2) "the risk that the denial of relief will produce injustice in other cases"; and (3) "the risk of undermining the public's confidence in the judicial process." 486 U.S. at 864. Each of these factors weighs against a finding of harmless error in this case.

A

1

There are several circumstances in which courts have found the first *Liljeberg* factor—"the risk of injustice to the parties in the particular case"—weighs in favor of finding harmless error for violations of § 455. None is present in this case.

The first is where the ruling involves a pure question of law that is subject to plenary review on appeal, a posture that some courts in some circumstances have found relevant.[11] That is not what we have here. The rulings at issue

---

given due weight. *See Buck v. Davis*, 137 S. Ct. 759, 779 (2017) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005)).

[11] *See United States v. Cerceda*, 172 F.3d 806, 813 n.10 (11th Cir. 1999) (en banc) ("In cases where the Court of Appeals reviews a district judge's challenged actions and affirms them on the merits either before or at the same time it considers whether the judge violated section 455(a), the possibility of a significant risk of injustice is substantially reduced—particularly if the review of the merits was plenary."); *see also Williamson*, 345 F.3d at 464–65 ("On appeal, this court reviews the grant of summary judgment *de novo* . . . and therefore Williamson has received a full review by an impartial panel."); *Patterson*, 335 F.3d at 485 ("Because we review a summary judgment ruling *de novo,* using the same standards as the district court, the

in this case resulted from a bench trial in which Judge Morgan exercised broad discretion in making findings of fact and credibility determinations. Indeed, Centripetal relies heavily on Judge Morgan's "broad discretion" in arguing for affirmance of the judgment. Appellee's Resp. Br. at 51 (quoting *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1362–63 (Fed. Cir. 2006)); *see also, e.g., id.* at 50 ("After weighing the evidence, the court found Dr. Striegel credible and accepted his analysis."); *id.* at 51 (citing *Endo Pharms. Inc. v. Actavis LLC*, 922 F.3d 1365, 1374 n.10 (Fed. Cir. 2019) (explaining credibility findings are not disturbed on appeal)); *id.* at 59 (stressing that "the court 'made detailed factual findings' as to why the close call

---

parties are guaranteed a fair, impartial review of the merits of the ruling."); *In re Sch. Asbestos Litig.*, 977 F.2d at 787 (finding no "serious injustice to the parties in th[e] case" pre-trial where summary judgment rulings were subject to plenary review upon final judgment); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1526 (11th Cir. 1999) (concluding that judge's potential bias presented no risk of injustice to party seeking vacatur because court exercised plenary review over merits in same appeal and concluded that district judge's grant of summary judgment was proper); *In re Cont'l Airlines Corp.*, 901 F.2d 1259, 1263 (5th Cir. 1990) ("The risk of injustice to the parties in allowing a summary judgment ruling to stand is usually slight," as "[s]uch rulings are subject to de novo review."). *But see Shell*, 672 F.3d at 1294 ("[A] judge's failure to recuse does not automatically constitute harmless error whenever there is *de novo* review on appeal."); *see also Ward v. Village of Monroeville*, 409 U.S. 57, 61 (1972) (rejecting the notion, in the context of state law proceeding where judge had a financial interest in the outcome, that "any unfairness at the trial level c[ould] be corrected on appeal and trial de novo in the County Court of Common Pleas").

18          CENTRIPETAL NETWORKS, INC. v. CISCO SYSTEMS, INC.

factor supported enhancement, including the impact of its credibility determinations").

The second circumstance is where the opposing party has delayed raising a known ground for recusal. *See, e.g.*, *In re United Shoe Mach. Corp.*, 276 F.2d 77, 79 (1st Cir. 1960) ("[K]nowing of a ground for requesting disqualification, [a party] can not be permitted to wait and decide whether he likes subsequent treatment that he receives."); *Ogala Sioux Tribe v. Homestake Mining Co.*, 722 F.2d 1407, 1414 (8th Cir. 1983) (denying relief in part because alleged grounds for disqualification were known at the time the case was decided by the trial judge but not raised until the case was on appeal); *In re Int'l Bus. Machs. Corp.*, 618 F.2d 923, 932 (2d Cir. 1980) (adopting timeliness requirement for § 455); *see also Liljeberg*, 486 U.S. at 868 ("It is [] appropriate to vacate the judgment unless it can be said that respondent did not make a timely request for relief . . . .").

In *Polaroid*, we affirmed the district court's denial of a motion for disqualification and vacatur made six-and-a-half years after the judge's decision and disclosure that her mother-in-law held stock in one of the parties. 867 F.2d at 1416–17. In denying vacatur, we noted that "[t]he passage of time" is a factor in the "equity/fairness equation," *id.* at 1418–20, and we considered all that the judge who denied the motion had to say about "Kodak's acquiescence, aging of witnesses, fading of memories, and the unfairness of vacating . . . [the] orders and requiring Polaroid to start all over," *id.* at 1420.

Here, there has been no such delay. Cisco moved for Judge Morgan's recusal just nine days after he disclosed his wife's ownership of Cisco stock.

The third circumstance where courts have declined vacatur is where substantial time has passed since the rulings in question (even though there has been no delay in making the motion when the facts became known). In this

respect, Centripetal relies on the Eleventh Circuit's en banc decision in *United States v. Cerceda*, 172 F.3d 806 (11th Cir. 1999) (en banc). But in that case, which dealt with the possible re-trial of multiple criminal defendants, it had been six years since one of the trials, and one of the key witnesses—who had been 84 years old and in poor health at the time of the first trial—would have been over 90 years old at the time of a new trial. *Id.* at 815. Centripetal has made no comparable showing in this case. Beyond a conclusory assertion in its supplemental brief that "evidence ha[s] gone stale," Appellee's Suppl. Br. at 6, Centripetal has not made any actual showing of staleness of evidence or fading of witness' memories in the time since the trial was held two years ago.[12]

Even if it had, any prejudice caused by the passage of time may be tempered by the fact that, as discussed in further detail below, this case would proceed under Federal Rule of Civil Procedure 63 on remand. Under that rule, a newly assigned judge has the ability to resolve the case based on the transcript from the previous trial. 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2922 n.19 (3d ed. 2022) (collecting cases).[13]

---

[12]    Moreover, we question whether the relevant date for staleness is the date the judge declined to recuse or the date of the decision on appeal. If the former is the relevant date, the lack of prejudice is even clearer here.

[13]    The replacement judge may recall any witness, and must do so at the request of a party if the testimony is "material and disputed" and the witness is available to testify again without undue burden. Fed. R. Civ. P. 63. "If, on the other hand, there are issues of credibility that cannot properly be resolved on the basis of the record or for any other reason the replacement judge concludes that it is not possible to proceed in fairness to the parties, the judge has discretion to grant a new trial." 11 Wright & Miller,

The fourth circumstance where courts have refused vacatur for a violation of § 455(b) is where one party has "made a showing of special hardship by reason of their reliance on the original judgment." *Liljeberg*, 486 U.S. at 869. There has been no such showing in this case.

2

Unable to bring this case under existing authorities, Centripetal nonetheless makes several arguments as to why the first *Liljeberg* factor weighs against vacatur. It argues that there is no risk of injustice to Cisco because Judge Morgan had "decided the case" prior to learning of his wife's ownership of Cisco stock, and therefore the judgment should stand since it was decided at a time when there was no § 455(b)(4) violation. Appellee's Resp. Br. at 63 (citing J.A. 30). But that is not a fair characterization of the facts. At the September 9, 2020 hearing on Cisco's motion for recusal, Judge Morgan stated that at the time he learned of his wife's financial interest in Cisco, he had drafted "130-some pages" of the opinion. J.A. 18580. But the opinion issued on October 5, 2020 was 167 pages, showing that the judge went on to draft an additional 37 pages after learning of the stock ownership. And although at that same hearing he stated that his views as to the appropriate resolution of the case were fixed, he admitted that he had not "decided 100 percent of it." *Id.* In any event, until an opinion is issued, it is well within a judge's prerogative to change his mind or to otherwise revise the decision. Here, the opinion was subject to revision until the time it issued.

---

*Federal Practice & Procedure* § 2922 (providing cases). "If a new trial is granted, the record of the previous trial may be used as a substitute for testimony of unavailable witnesses." *Id.*

Moreover, after learning of his wife's stock ownership, Judge Morgan continued to sit on post-trial motions that needed to be decided but had not even been briefed by the parties. Cisco's post-trial motions were rejected in a 49-page opinion and order issued on March 17, 2021, while Judge Morgan knew his wife continued to hold stock in Cisco.[14]

Centripetal next argues that there is no risk of injustice to Cisco because there is no evidence of actual bias, relying on a case applying § 455(a) (requiring recusal where there is an appearance of impropriety) in which the court declined to vacate orders, at least in part, because there was no evidence of actual bias.[15] *See* Appellee's Suppl. Br. at 8 (citing *In re Sch. Asbestos Litig. v. Kelly*, 977 F.2d 764, 785–87 (3d Cir. 1992) (declining to vacate orders en masse where there was, among other things, no "likelihood of actual bias")). Section 455(b)(4) is different. Unlike § 455(a), it is not triggered by an appearance of impropriety, but by a known financial interest, which creates not only an appearance of impropriety but impropriety itself. We have previously ordered vacatur under § 455(b)(4) notwithstanding "that there [wa]s neither an allegation nor suggestion that the judge was unduly influenced by his wife's financial interest." *Shell*, 672 F.3d at 1291.

The objective of the statute—public confidence in the judiciary—would be severely undermined by requiring a

---

[14]    *See United States v. O'Keefe,* 128 F.3d 885, 891 (5th Cir. 1997) ("Once a judge recuses himself from a case, the judge may take no action other than the ministerial acts necessary to transfer the case to another judge."); *see also Shell*, 672 F.3d at 1291 (citing *O'Keefe,* 128 F.3d at 891).

[15]    On this point, Centripetal oddly relies on Cisco's waiver of any violation of § 455(a) as somehow an admission that Judge Morgan held no actual bias. There was no such admission.

showing of actual bias in order to vacate orders infected with a § 455(b)(4) violation.  Making such a bias determination would require the sort of line drawing that the statute was designed to avoid.[16]  We note that in the closely related context of orders rendered by judges with a "direct, personal, substantial [and] pecuniary" interest in reaching a certain outcome in a case, the Supreme Court has rejected the notion that a showing of actual bias is required for a due process violation. *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972); *see also id.* at 61 (finding that if a state statute governing the disqualification of interested, biased, or prejudiced judges required "that an accused [person] must show [actual prejudice] in his particular case, the statute requires too much and protects too little"); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986) ("The Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.  But to perform its high function in the best way, justice must satisfy the appearance of justice.'" (quoting *In re Murchison*, 349 U.S. 133, 136 (1955))).

Centripetal also relies on the time and cost of the litigation thus far, the complexity of the case, and the delay in

---

[16]  The reason § 455(b)(4) establishes a bright-line rule and does not require a showing of prejudice is because of the great difficulty in establishing actual prejudice in any particular case.  *See Chase*, 343 F.3d at 128 ("[A] bright-line test . . . avoids many difficult line-drawing decisions and is in that sense actually helpful to judges."); *see also* H.R. Rep. No. 93-1453, *reprinted in* 1974 U.S.C.C.A.N. 6351, 6358 (1974) (observing that without a bright-line rule, a judge would be left to "decide the disqualification issue at his peril, with the possibility that if he decided to sit he may be subject to criticism or that public confidence in the federal judicial system may be weakened").

obtaining judgment, as weighing against vacatur. But Centripetal cites no case where these considerations alone led to a finding of harmless error, and we do not think that those factors here significantly weigh against vacatur. These considerations would exist in every case where a ground for recusal arises after significant trial proceedings.

Finally, to the extent that Centripetal argues that there is no need to vacate Judge Morgan's rulings because his wife owned stock in the losing party (and his interests would be adversely affected, not benefited, by his decision), *see* Appellee's Resp. Br. at 63, that fact does not remove the risk of prejudice. Where a judge becomes aware of a possible appearance of impropriety, there is a substantial risk that he or she might bend over backwards to rule against that party to try to prove that there is no bias. *See In re Sch. Asbestos Litig.*, 977 F.2d at 782 ("[B]ias c[an] manifest itself in a number of ways."). Congress did not make recusal obligations contingent on which party's stock was owned, and we are aware of no case suggesting that this is a relevant factor.

Accordingly, considering all relevant factors, we find that the risk of injustice to the parties weighs against a finding of harmless error and in favor of vacatur.

B

The second *Liljeberg* factor also weighs against finding harmless error and in favor of vacatur. In *Liljeberg*, the Supreme Court indicated that a relevant consideration is whether granting or denying vacatur "w[ould] [] produce injustice in other cases." 486 U.S. at 868. The Court indicated that this factor weighs in favor of vacatur when it "may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered." *Id.*

24         CENTRIPETAL NETWORKS, INC. v. CISCO SYSTEMS, INC.

Centripetal argues that the refusal to vacate here would have no effect in other cases because the facts of this case are unusual, *see* Appellee's Suppl. Br. at 9 ("Rarely will a judge discover a financial interest in a party months after an extensive bench trial, after the judge already invested years of resources and time, and after the judge decided to rule against that party and nearly completed his trial opinion in the case, but before finalizing and publishing that opinion." (emphasis omitted)), and because the denial of Cisco's Motion for Recusal "rest[ed] on the specific facts of this case," Appellee's Resp. Br. at 63 (quoting *Polaroid*, 867 F.2d at 1420). We disagree. Refusal to vacate here would have a significant adverse effect in other cases. While the specific facts of this case may be unique, they are symptomatic of an increasingly common problem, as discussed in the next section. A vacatur here would signal to judges in other cases the importance of complying strictly with the procedures spelled out in § 455(f). A failure to vacate would suggest that sitting on a case in which the judge's family has a financial interest is not a serious issue.

We find the second factor weighs in favor of vacatur.

C

Finally, and perhaps most significantly, the denial of vacatur here risks "undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864. Centripetal argues that "[v]acating under the unusual facts of this case" would cause the public to "lose confidence in the finality of judgments." Appellee's Suppl. Br. at 10–11. Quite the contrary. The failure to vacate here would strike at the heart of what the statute was designed to protect. The Supreme Court in *Liljeberg* explained that the purpose of § 455 is to "promote public confidence in the integrity of the judicial process." 486 U.S. at 860; *see also Davis v. Xerox*, 811 F.2d 1293, 1296 (9th Cir. 1987) (noting that "Congress was willing to accept disruptions" that may be caused by remedying violations of § 455 "in return for the perceived

benefits of promoting public confidence in the judiciary"). It is seriously inimical to the credibility of the judiciary for a judge to preside over a case in which he has a known financial interest in one of the parties and for courts to allow those rulings to stand.

This assessment is confirmed by responses to the recent reports of many federal judges presiding over cases in which they or relevant family members owned stock in a party. *See* James V. Grimaldi et al., *131 Federal Judges Broke the Law by Hearing Cases Where They Had a Financial Interest*, Wall St. J. (Sept. 28, 2021). Congress responded by recently enacting the Courthouse Ethics and Transparency Act, Pub. L. No. 117-125, 136 Stat 1205 (2022), which requires judges to make more timely and accessible disclosures of their financial holdings and potential conflicts of interest. *See also* 168 Cong. Rec. H4522 (daily ed. Apr. 27, 2022) (statement of Rep. Hakeem Jeffries) ("Failure to recuse can cause real harm to parties seeking fair and impartial justice and leave a cloud of doubt over any decision that is made once the conflicts are subsequently uncovered."). Chief Justice Roberts similarly responded by devoting a substantial portion of his 2021 Year-End Report on the Federal Judiciary to discussing the importance of judges complying with their ethical obligations. Chief Justice John G. Roberts, Jr., 2021 Year-End Report on the Federal Judiciary, 3.

It simply cannot plausibly be argued that public confidence in the judiciary will be degraded by a decision that vacates a judge's rulings rendered while he had a known financial interest in one of the parties. Rather, in the circumstances here, vacatur is essential to preserve public confidence.

\*   \*   \*

We therefore conclude that the *Liljeberg* factors weigh against finding harmless error in this case. We note that in cases involving recusal under § 455(b)(4), few circuit

26      CENTRIPETAL NETWORKS, INC. v. CISCO SYSTEMS, INC.

decisions have declined to vacate a prior ruling made while the judge was aware of the disqualifying interest and failed to divest. Still rarer are decisions declining to vacate substantive rulings in such circumstances. We think it should be a very unusual case where vacatur is denied when a judge discovers a clear disqualifying interest under § 455(b)(4), recusal is required, there is a failure to divest, and the judge proceeds to rule on the case despite that clear obligation.

## III

Because we find Judge Morgan's violation of § 455(b)(4) was not harmless error, vacatur is the appropriate remedy. *See Shell*, 672 F.3d at 1293. Because § 455(b)(4) requires "actual knowledge" of disqualifying circumstances, *Chase*, 343 F.3d at 127, the only rulings subject to vacatur are those issued after Judge Morgan learned of his wife's financial interest in Cisco, on August 11, 2020. Those rulings are the Opinion & Order denying Cisco's Motion for Miscellaneous Relief (i.e., Motion for Recusal), ECF No. 619 (Oct. 2, 2020); the Opinion & Order re Infringement and Damages, ECF No. 621 (Oct. 5, 2020); and the Opinion & Order Denying Post-Judgment Motions & Declaring the Case Final, ECF No. 638 (Mar. 17, 2021).

Centripetal argues that reassignment to a new judge is not necessary if we vacate and remand. Allowing the same judge to reaffirm his own rulings would severely undermine § 455, which is why cases are routinely reassigned upon vacatur of judgment under § 455. *See, e.g.*, *Shell*, 672 F.3d at 1294. In any event, that argument is moot in light of the unfortunate death of Judge Morgan on May 1, 2022, of which we take judicial notice.[17] Accordingly, upon

---

[17] *See* Obituary, *Judge Henry Coke Morgan Jr.*, Virginian-Pilot (May 8, 2022), available at

remand the case will be assigned to a new judge in the normal course, pursuant to Rule 63, which allows a replacement judge "if a judge conducting a hearing or trial is unable to proceed." Fed. R. Civ. P. 63.

## CONCLUSION

For the foregoing reasons, we reverse the Opinion & Order denying Cisco's Motion for Miscellaneous Relief (ECF No. 619), *see Recusal Op.*, 492 F. Supp. 3d 615, we vacate the Opinion & Order re Infringement and Damages (ECF No. 621), *see Merits Op.*, 492 F. Supp. 3d 495, and the Opinion & Order Denying Post-Judgment Motions & Declaring the Case Final (ECF No. 638), and remand for further proceedings before a newly appointed judge, who shall decide the case without regard for the vacated opinions and orders.

### REVERSED IN PART, VACATED IN PART, AND REMANDED

## COSTS

Costs to Appellant.

---

https://www.legacy.com/us/obituaries/pilotonline/name/henry-morgan-obituary?id=34660901.